## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE E. KUHNS and      :     CIVIL NO.: 4:15-CV-01197
SHANNON C. KUHNS,      :
                         :
      Plaintiffs,      :
                         :
      v.              :     (Chief Magistrate Judge Schwab)
                         :
THE TRAVELERS HOME AND      :
MARINE INSURANCE COMPANY, :
                         :
      Defendant.      :

## MEMORANDUM

### I. Introduction.

The plaintiffs, Wayne E. Kuhns and his wife, Shannon C. Kuhns, bring this diversity action for declaratory relief against the defendant, The Travelers Home and Marine Insurance Company ("Travelers"), claiming that Travelers wrongfully denied them stacked, underinsured motorist coverage. Even though Mr. Kuhns acknowledges that he expressly waived stacked, underinsured motorist coverage when he initially bought his motor vehicle insurance policy from Travelers, he claims that Travelers was required to provide him with another opportunity to waive such coverage when he subsequently added a new vehicle to his policy.[1]

Travelers contends, however, that it was not required to do so and that the waiver

---

[1] We refer specifically to Mr. Kuhns since he appears to be the only "[N]amed [I]nsured" under the subject policy. *See doc. 24-2* at 17, 57.

Mr. Kuhns initially executed had continuing effect, such that it was valid at the time of the subject motor vehicle accident. Having extensively reviewed the substantive law of Pennsylvania, regarding such stacking issues, we conclude that the Kuhns are not entitled to the relief that they seek in this action. Thus, for the reasons set forth below, we will grant Travelers's pending motion for summary judgment, and deny the Kuhns's pending cross-motion for summary judgment.

**II. Background.**

On June 18, 2015, the Kuhns filed a complaint (*doc. 1*) under the Declaratory Judgment Act, 28 U.S.C. § 2201, to which Travelers filed an answer with affirmative defenses (*doc. 6*). The parties subsequently consented to proceed before a United States Magistrate Judge (*see doc. 12*), and the matter was reassigned to the undersigned Chief Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) (*see doc. 13*). Following reassignment, we held a telephonic case management conference with the parties (*see doc. 14*), and in accordance with that conference, we issued an order (*doc. 16*), setting forth the deadlines that would govern this action moving forward. Thereafter, the parties filed a document titled, "The Parties' Joint Stipulation of Facts" (hereinafter, "Joint Stipulation" or "Stipulation") (*doc. 17*), followed by cross-motions for summary judgment (*docs.*

*20, 24*).  Before we turn to the merits of those motions, however, we set forth the undisputed, material facts.[2]

On or around May 7, 2008, Travelers issued a motor vehicle insurance policy, bearing policy number 982954574 101 1, effective May 9, 2008, to November 9, 2008 ("Policy"), to Mr. Kuhns.[3] *Doc. 17* at ¶ 1.  On that same day, Mr. Kuhns executed a "Pennsylvania Selection of Uninsured and/or Underinsured Motorists Coverage Limits" form.  *Id.* at ¶ 2.  By executing this form, Mr. Kuhns selected uninsured and underinsured motorist benefits in the amount of $100,000.  *Id.* at ¶ 3.  Also on that same day, Mr. Kuhns, rejected stacked, underinsured

---

[2] Pursuant to the Local Rules for the United States District Court for the Middle District of Pennsylvania, a party moving for summary judgment must attach to the motion "a separate, short and concise statement of the material facts[,]" and the non-moving party is required to submit "a separate, short and concise statement" in response thereto. M.D. Pa. L.R. 56.1. Here, the parties, as discussed above, have submitted a Joint Stipulation (*doc. 17*), setting forth the undisputed, material facts of this case. It is the position of the Kuhns, and understandably so, that the parties filed this Stipulation in lieu of any Local Rule 56.1 statement. *See doc. 25* at 4 n.1. It is the apparent position of Travelers, however, that this Stipulation does not preclude either party from also filing a Local Rule 56.1 statement. As evinced by the record, Travelers has submitted such a statement in support of its motion for summary judgment. *See doc. 20-1*. Considering, however, that the Joint Stipulation makes no explicit reference to the parties' intention that it would serve as the exclusive list of the undisputed, material facts, and further considering that the Kuhns appear to have waived any such argument by responding to Travelers's Local Rule 56.1 statement (*see doc. 26*), we have decided to cull the facts from the following, three documents: the Joint Stipulation; Travelers's Local Rule 56.1 statement; and the Kuhns's response thereto.

[3] Although the parties do not articulate when Travelers issued this Policy to Mr. Kuhns, the documents suggest the Policy was issued on or around May 7, 2008. *See, e.g.*, *doc. 24-2* at 1.

motorists benefits by signing a "Rejection of Stacked Underinsured Coverage Limits" form. *Id.* at ¶ 4. This rejection form was proper and in compliance with 75 Pa.C.S. § 1738, a Pennsylvania statute which we will discuss more fully below. *Id.* at ¶ 5.

At its inception, the Policy covered the following three vehicles: a 1996 Dodge Ram Pickup; a 1998 Dodge Durango; and a 1986 Chevrolet C30. *Id.* at ¶ 6. On or about July 1, 2008, however, a fourth vehicle, and specifically, a 1988 Ford F150 Pickup Truck, was added to the Policy. *Id.* at ¶ 7. The Kuhns contacted their insurance agent upon the purchase of this vehicle and requested that coverage also be provided for it under the existing Policy. *Id.* at ¶ 8. The parties do not identify when, however, the Kuhns purchased their fourth vehicle or when they contacted their insurance agent, requesting coverage for that vehicle.

The only paperwork that was generated by Travelers when the fourth vehicle was added to the Policy was an "Automobile Policy Declarations" sheet (*doc. 24-2* at 57-60). *Id.* at ¶¶ 9, 10. This Declarations sheet is similar to the "Automobile Policy Declarations" sheet (*doc. 24-2* at 17-20) that was issued at the inception of the Policy, as both sheets reflect non-stacked, uninsured and underinsured motorists benefits of "$100,000 each accident" (*see id.* at ¶¶ 11, 12).

Moreover, Travelers never requested (*id.* at ¶ 16) or required (*doc. 20-1* at ¶ 12) Mr. Kuhns "to complete any forms in order to replace or add vehicles to the

[Policy]," including the fourth vehicle. Travelers also never requested or required Mr. Kuhns to sign a new stacking waiver upon the addition of the fourth vehicle to the Policy. *Doc. 17* at ¶ 17. Further, the Kuhns never paid insurance premiums for stacked, uninsured or underinsured motorists coverages (*doc. 20-1* at ¶ 19); rather, they merely paid the premiums as invoiced by Travelers under the terms of the Policy as it was originally written[4] (*doc. 17* at ¶ 18). Under these terms, the Policy renewed every six months, including on November 9, 2008, May 9, 2009, and November 9, 2009. *Id.* at ¶ 19.

Significantly, the parties do not dispute that the Kuhns's fourth vehicle was added to the Policy within 30 days of it having been purchased. *Id.* at ¶ 13. The parties also do not dispute that the addition of the fourth vehicle to the existing Policy constituted a "covered auto" as defined in Section J.2. of that Policy (*Id.* at ¶ 14). Section J provides, in material part, as follows:

J. "Your covered auto" means:

    1.    Any vehicle shown in the Declarations.

    **2.    Any of the following types of vehicles on the date you become the owner;**

        a.    a private passenger auto; or

---

[4] While the Kuhns did not pay for stacked coverage, their total premium increased, as one would expect, when their fourth vehicle was added to the Policy. *Compare doc. 24-2* at 18 ("Total Premium for This Policy: $712") *with id.* at 58 ("Total Premium for This Policy: $831").

> b.    a pickup or van.

> **This provision (J.2) applies only if:**

>> a.    you acquire the vehicle **during** the policy period;

>> b.    you ask us to insure it within **30 days** after you become the owner; and

>> c.    with respect to a pickup or van, **no other insurance policy** provides coverage for that vehicle.

>> If the vehicle you acquire replaces one shown in the Declarations, it will have the same overage as the vehicle it replaced.  You must ask us to insure a replacement vehicle within 30 days only if:

>> a.    you wish to add or continue Damage to Your Auto Coverages; or

>> b.    it is a pickup or van used in any "business" other than farming or ranching.

>> **If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.**

*Id.* at ¶ 15 (emphasis added).  And, although not specifically set out in the Joint Stipulation, the parties also do not appear to dispute that, on the date the Kuhns became the owner of the fourth vehicle, there was no other insurance policy out there, which was providing coverage for that vehicle.

On November 25, 2009, Mr. Kuhns was involved in a motor vehicle accident with Yang Yi Chen, while operating the 1996 Dodge Ram Pickup Truck.

6

*Id.* at ¶ 20. Mr. Kuhns made a claim against Mr. Chen for the bodily injuries he sustained in that accident, and Mr. Kuhns received the bodily injury liability limits of Mr. Chen's automobile insurance policy. *Id.* at ¶ 21. Mr. Kuhns settled his claim with Mr. Chen on November 29, 2011 (*id.* at ¶ 22), by signing a release and settlement agreement (*id.* at ¶ 24). Travelers consented to that settlement. *Id.* at ¶ 23.

In addition to making a claim against Mr. Chen, Mr. Kuhns also made a claim for underinsured motorist coverage under his Policy with Travelers. *Id.* at ¶ 28. As a result, Travelers paid Mr. Kuhns the non-stacked, underinsured motorist coverage limits of $100,000. *Id.* at ¶ 29. The Kuhns essentially claim, however, that this amount was insufficient because they are entitled to stacked, underinsured motorist coverage for the four vehicles that were listed under their Policy on the date of the accident, the sum total of which would be $400,000 (4 vehicles x $100,000). *See id.* at ¶¶ 27, 33.

### III. Standard of Review.

Both parties have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Through summary adjudication the court may dispose of those

claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(a)).

## IV. Discussion.

Federal courts sitting in diversity jurisdiction are to apply state substantive law and federal procedural law. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (explaining that "[a] federal court sitting in diversity must apply state substantive law and federal procedural law." (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938))). As discussed above, the Kuhns have brought this diversity action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Because federal courts have concluded that this Act is procedural in nature, and not substantive (*see, e.g.*, *Westfield Ins. Co. v. Puett*, No. 3:10-CV-142, 2010 WL 411731, at *1 (M.D. Pa. Jan. 26, 2010) (collecting cases)), we will apply the procedural strictures of the Act, but the substantive law of the state when interpreting the Policy. *See id.* (undertaking the same approach).

With respect to the strictures of the Declaratory Judgment Act, we note that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201 (emphasis added).[5] And, with respect to the substantive law of the state, we note that "the highest court of the state"—and for our purposes, the Pennsylvania Supreme Court—"is the final arbiter of what is state law." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) (citing *Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls*, 306 U.S. 103, 107 (1939)). Thus, when the Pennsylvania Supreme Court has spoken, we are to accept its pronouncement "as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West*, 311 U.S. at 236.

---

[5] The United States Supreme Court "has long held" that the Declaratory Judgment Act "confers discretionary, rather than compulsory, jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) ("*Reifer*") (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). In this case, however, neither party has argued that we should use that discretion to refrain from exercising jurisdiction over this action. Similarly, neither party has attempted to rebut the presumption that exists in favor of exercising such jurisdiction since there is no indication in the record that there is a related case pending in state court. *See Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 226 (3d Cir. 2017) ("Under *Reifer*, the absence of a pending state case created a rebuttable presumption in favor of jurisdiction."). Thus, we will exercise jurisdiction. *Cf. Kristyn Ewart v. State Farm Mut. Auto. Ins. Co.*, No. 17-878, 2017 WL 2438845 (E.D. Pa. June 6, 2017) (declining to exercise jurisdiction in a federal declaratory judgment action that—unlike the Kuhns's case—was *removed* from state court and tasked the federal court to "predict whether Pennsylvania law requires an insurer to obtain a new selection of lower uninsured motorist coverage limits and a new rejection of stacked uninsured motorist coverage when a new vehicle is added to an existing policy insuring a *single* vehicle") (emphasis added).

The relevant starting point for our discussion on the substantive law of the state is Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), codified at 75 PA. CON. STAT. ANN. §§ 1701-1799.7. This statutory scheme, which was originally enacted in 1984 and amended thereafter, replaced the prior No-fault Act[6] and reflected a "legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." *Paylor v. Harford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994); *see also Wolgemuth v. Harleysville Mut. Ins. Co.*, 535 A.2d 1145, 1151 (Pa. Super. Ct. 1988) (explaining that the legislature enacted the MVFRL in response to "the rapidly escalating cost of coverage under the No-fault Act and the increasingly high number of uninsured motorists.") (footnote omitted).

Under the MVFRL, motor vehicle liability insurance policies must offer certain coverages to insureds, including for instance, uninsured and underinsured motorists coverages. *See* 75 PA. CON. STAT. ANN. § 1731(a) ("No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage).");

---

[6] Act of July 19, 1974, P.L. 489, as amended, 40 P.S. §§ 1009.101–1009.701, repealed by the Act of February 12, 1984, P.L. 26.

*Caron v. Reliance Ins. Co*., 703 A.2d 63, 67 (Pa. Super. Ct. 1997) (interpreting § 1731(a) of the MVFRL to mean that uninsured and underinsured motorists coverages must be offered to insureds). Uninsured coverage is defined as coverage for "persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles." 75 PA. CON. STAT. ANN. § 1731(b). And, underinsured coverage, which is at issue here, is defined as coverage for "persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." *Id.* at § 1731(c); *see also Conrad v. Progressive Cas. Ins. Co*., 48 Pa. D. & C.3d 71, 79–80 (Pa. Com. Pl. 1987) (explaining, in the context of underinsured coverage, that "[t]he legislative mandate to insurance carriers issuing motor vehicle insurance policies in Pennsylvania was to provide coverage to insureds for those cases when third party liability limits were inadequate or not enough to satisfy an injured parties' [sic] losses.").

While the MVFRL requires all motor vehicle liability insurance policies to offer uninsured and underinsured coverages, it also provides that the purchase of such coverages is "optional." 75 PA. CON. STAT. ANN. § 1731(a). When, however, uninsured and/or underinsured coverages have been purchased, the MVFRL's default provision specifies that the coverages are stacked:

§ 1738. Stacking of uninsured and underinsured benefits and option to waive

> **(a) Limit for each vehicle.--**When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

75 PA. CON. STAT. ANN. § 1738(a). "The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *McGovern v. Erie Ins. Grp.*, 796 A.2d 343, 344 (Pa. Super. Ct. 2002). Thus, Pennsylvania courts have recognized two types of stacking: intra-policy stacking and inter-policy stacking. *Id.* (citing *In re*: *Insurance Stacking Litigation*, 754 A.2d 702 (Pa. Super. Ct. 2000)). Inter-policy stacking "is the addition of coverages for vehicles insured under different policies of insurance." *McGovern*, 796 A.2d at 345. Whereas, intra-policy stacking, which is at issue here, is the addition of coverages for multiple vehicles that are "insured under a single policy of insurance." *Id.*

Despite the availability of stacking benefits under the MVFRL, a named insured may waive these benefits. More specifically, § 1738 of the MVFRL provides as follows:

12

> **(b) Waiver.--**Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

75 PA. CON. STAT. ANN. § 1738(b).  Thus, it is presumed that stacking applies, unless an insured rejects such stacking by executing a waiver form that contains the specific, statutory language set out in § 1738(d).  *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 90 (3d Cir. 2009) ("*Pro Design, P.C.*").

At issue in this case, is the MVFRL's statutory provision concerning when an insurer is required to provide its insured with an opportunity to waive stacked coverage. That statutory provision is § 1738(c), and it provides as follows:

> **(c) More than one vehicle.--**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 PA. CON. STAT. ANN. § 1738.  The Pennsylvania Supreme Court has rendered two, seminal opinions, where it sets forth its interpretation of this statutory provision, as well as a discussion on when an insured must be given the opportunity to waive stacked limits of coverage.  Those opinions are *Sackett v. Nationwide Mutual Insurance Co.*, 919 A.2d 194 (Pa. 2007) ("*Sackett I*") and *Sackett v. Nationwide*, 940 A.2d 329 (Pa. 2007) ("*Sackett II*"). Because we find

that *Sackett I* and *II* are instructive to our decision here, we discuss them in detail below.

In *Sackett I*, the Sacketts insured two vehicles under a motor vehicle insurance policy that was issued by Nationwide Mutual Insurance Company ("Nationwide"). 919 A.2d at 197. Mr. Sackett, the first named insured under that policy, selected $100,000 in underinsured motorist coverage, but rejected stacking of that coverage by executing a waiver form pursuant to § 1738(d) of the MVFRL. *Id.* Although a third vehicle was subsequently added to the policy, Nationwide did not provide Mr. Sackett with another opportunity to waive stacked, underinsured motorist coverage. *Id.*

Mr. Sackett was subsequently injured in a motor vehicle accident, for which he and his wife asserted a claim for stacked, underinsured motorist coverage under the policy. *Id.* Their claim was denied, and the Sacketts proceeded by filing a declaratory judgment action against Nationwide, alleging that the underinsured motorist coverage available was $300,000 (the sum of $100,000 for each of their three vehicles under the policy). *Id.* On cross-motions for summary judgment, the trial court concluded that Nationwide had no duty to obtain new stacking waivers from the Sacketts when additional vehicles were added to the policy because the Sacketts had already executed a valid stacking waiver. *Id.* at 197-98. The Pennsylvania Superior Court affirmed this conclusion. *Id.* at 198.

14

On appeal, the Pennsylvania Supreme Court considered the specific issue of whether the MVFRL requires a motor vehicle insurer to provide an insured with the opportunity to waive stacked "uninsured/underinsured coverage for each instance an insured purchases [such] coverage by adding a vehicle to an existing policy[.]" *Id.* at 196. The Court answered this issue in the affirmative and held, under § 1738(c) of the MVFRL, that when a new vehicle is added to an existing policy and uninsured/underinsured coverage is purchased, insurers must provide their insureds with a new § 1738(d) stacking waiver, so that their insureds can waive the new, increased amount of available stacked uninsured/underinsured coverage. *Id.* at 196-97; *see also id.* at 202. The Court, in applying this holding to the facts of the case, concluded that because Mr. Sackett, as the first name insured, was denied the opportunity to waive the new amount of stacked uninsured/underinsured motorist coverage, he had not, in fact, waived such coverage. *Id.* at 202.

"Had *Sackett I*'s holding been left undisturbed," *Pro Design, P.C.*, 566 F.3d at 91, we would undoubtedly find, in the instant matter, that Mr. Kuhns was entitled to a new stacking waiver when the fourth vehicle was added to the Policy. In *Sackett II*, however, the Pennsylvania Supreme Court granted Nationwide's application for reargument and modified its *Sackett I* holding. While the Court was considering whether or not to grant Nationwide's application, it invited

Pennsylvania's Insurance Commissioner, "the cabinet-level official charged with the administration and enforcement of the MVFRL," to file an *amicus* statement. *Sackett II*, 940 A.2d at 330. In his statement, the Commissioner explained that:

> [T]hroughout Section 1738's seventeen-year history, once policies have been put into place, the Department has not treated the addition of a new vehicle, known in the industry as an "add-on," as a new purchase of coverage. Rather, the Department has deemed this to be an extension of pre-existing coverage. Thus, the Department has not required carriers to issue, or policyholders to execute, serial waivers when vehicles are added to multi-vehicle policies in order to reaffirm the continuation of unstacked [uninsured/underinsured motorists] coverage.

*Id.* at 331. The Commissioner further explained that:

> [T]he mechanism by which vehicles generally are added to existing policies is via "newly acquired vehicle clauses," which are made practically necessary by the mandate of the MVFRL for financial responsibility as a prerequisite to operation of a motor vehicle, *see* 75 Pa.C.S. § 1786, and are included universally within automobile insurance policies issued in Pennsylvania. The clause explicitly permits consumers to extend existing coverage, with the same applicable types of coverage and limits, to new and/or substitute vehicles, with coverage applying automatically upon acquisition, subject to various conditions, including a requirement of timely subsequent notice to the insurer.

*Id.* This mechanism, the Commissioner explained, "facilitates immediate consumer transactions and affords predictability and certainty in terms of the availability and scope of coverage." *Id.*

In connection with these explanations, the Commissioner argued that "*Sackett I* effectively nullifie[d] the newly-acquired-vehicle clause in policies and

strip[ped] policyholders of the associated benefits."[7] *Id.* The Sacketts, on the other hand, offered a different explanation for these clauses. *See id.* at 331-32. Although they agreed with the Commissioner that the automatic coverage extending under after-acquired-vehicle clauses does not constitute a new purchase of coverage under § 1738 of the MVFRL, the Sacketts argued that such automatic coverage only persists for the duration of the "reporting period," i.e., the period within which the insured is required to provide the insurer with notice of the new vehicle purchase. *Id.* at 332. The Sacketts further argued that, once formal coverage was arranged during that reporting period, new uninsured/underinsured insurance is purchased on the new vehicle, thereby requiring the insurer, under § 1738(c), to provide the insured with a new opportunity to waive the stacked uninsured/underinsured coverage. *Id.*

The Supreme Court, upon reviewing the Commissioner's statement and the Sacketts' corresponding arguments, expressly acknowledged that its interest in granting Nationwide's application for reargument was focused specifically on the allegation that *Sackett I* could be read as negating the effect of after-acquired-vehicle clauses in motor vehicle liability insurance policies. *Id.* In support, the

---

[7] These "newly-acquired-vehicle" clauses are also commonly referred to as "after-acquired-vehicle clauses." *Powell v. Allstate Prop. & Cas. Ins. Co.*, No. 13-5721, 2014 WL 3573139, at *4 n.9 (E.D. Pa. July 21, 2014). For purposes of consistency, however, we will simply refer hereinafter to such clauses as "after-acquired-vehicle" clauses.

Court explained that the Commissioner's argument had "substantial force" and made clear that the "purchase" of uninsured/underinsured coverage, under § 1738(c) is a term of art in the automobile insurance arena that does not include the addition of a new vehicle to a policy pursuant to its after-acquired-vehicle clause. *Id.* at 333.

Thus, the Court decided to modify its prior opinion, by clarifying that "*Sackett I* does not preclude the enforcement of an initial waiver of stacked [uninsured/underinsured motorists benefits] relative to coverage extended under after-acquired-vehicle provisions of an existing multi-vehicle policy." *Id.* In so clarifying, however, the Court was careful to make a distinction between the two types of after-acquired-vehicle clauses that are utilized in motor vehicle liability insurance policies, that is, continuous and finite after-acquired-vehicle clauses. *See id.* at 333-34. More specifically, the Court sated as follows:

> To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, again, we clarify that *Sackett I* should not disturb the effect of an initial [uninsured/underinsured motorists] stacking waiver obtained in connection with a multi-vehicle policy. Again, our reasoning is that the term "purchase," as specially used in Section 1738, does not subsume such adjustments to the scope of an existing policy containing such terms.
>
> We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the

insurer to obtain new or supplemental [uninsured/underinsured motorists] stacking waivers. However, where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, *see, e.g.*, *Bird* [*v. State Farm Mut. Auto Ins. Co.*] 165 P.3d [343,] 346–47 [(N.M. Ct. App. 2007)], *Sackett I* controls and requires the execution of a new [uninsured/underinsured motorists] stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.

*Id.* at 334 (footnotes omitted). Because, however, the after-acquired-vehicle clause in the Sacketts' policy had not been made a part of the record, the Pennsylvania Supreme Court was precluded from applying its holding to the facts of the case, and thus, the matter was remanded to the trial court.[8] *See id.* at n.6

On remand, the trial court conducted a non-jury trial and declared that the Sacketts were entitled to stacked, underinsured motorist benefits. Following the denial of post-trial motions, Nationwide filed an appeal to the Pennsylvania Superior Court, which considered the question of whether Nationwide had to obtain a new stacking waiver from the Sacketts when they added their third vehicle to the policy pursuant to an "endorsement," and not an after-acquired-vehicle

---

[8] Before moving on, we note that *Sackett I* and *II* can be succinctly summarized as follows: when an insured adds a new vehicle to an existing multi-vehicle policy, the insurer, under *Sackett I*, must provide that insured with a new opportunity to waive stacked uninsured/underinsured motorists coverages pursuant to § 1738(c), unless, under *Sackett II*, the insured has already signed a valid stacking waiver pursuant to § 1738(d) and coverage for the newly-added vehicle is extended under a continuous after-acquired-vehicle clause.

clause.[9]  *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637, 639 (Pa. Super. Ct. 2010) ("*Sackett III*").  The Superior Court answered this question in the affirmative and held that "once the Sacketts added the [third vehicle] to their policy through an endorsement, [Nationwide] had to secure a new waiver in order to prohibit the Sacketts from stacking [underinsured motorist] benefits."  *Id.*  In reaching this holding, the Court reviewed the opinions of the Pennsylvania Supreme Court in *Sackett I* and *Sackett II*, as well as the after-acquired-vehicle clause in the parties' policy, which provided in pertinent part as follows:

> ***Coverage Extensions***
>
> * * *
>
> **USE OF OTHER MOTOR VEHICLES**
>
> This coverage also applies to certain other **motor vehicles** as follows:
>
> * * *
>
> 2. a four-wheel motor vehicle acquired by you. This coverage applies only during the first 30 days you own the vehicle unless it replaces your auto. If the newly acquired vehicle does not replace your auto, all household vehicles owned by you must be insured by us or an affiliate for this extension of coverage to apply.
>
> We provide this coverage only if you do not have other collectable insurance. You must pay any added premium resulting from this coverage extension.

---

[9] In the factual background section of its opinion, the Superior Court refers to this "endorsement" as a "corrected declarations/endorsement page."  *Id.* at 638.  There is no further context, however, to this page.

*Id.* at 640 n.2 (emphasis in original).

Upon review of this language, the Superior Court found that, because the Sacketts' third vehicle was covered under the policy pursuant to an "endorsement" and not the after-acquired-vehicle clause, the Sacketts had obtained "collectable insurance," which was independent of the automatic coverage offered under the after-acquired vehicle clause. *See id.* at 640 ("In short, after the Sacketts added the [third vehicle] to the policy by way of an endorsement, the [third vehicle] was covered under the general terms of the policy and not its after-acquired[-]vehicle clause."). Thus, the Superior Court concluded, since the Sacketts had added the third vehicle to the policy prior to the subject motor vehicle accident, Nationwide was obligated, under *Sackett I*, to obtain a new stacking waiver from the Sacketts.[10] *Id.*

Notwithstanding this conclusion, the Superior Court went on to address Nationwide's alternative arguments, including its argument that the "after-acquired[-]vehicle clause was continuous in nature, and thus, a new stacking waiver was unnecessary." *Id.* at 641. The Superior Court found that the after-acquired-vehicle clause was "inherently finite" since it provided "coverage . . . only during the first 30 days" that an insured acquired a new vehicle. *Id.*

_____

[10] Even though the *Sackett I* Court specifically referred to Mr. Sackett, the *Sackett III* Court referred to the Sacketts collectively.

Consequently, the Superior Court rejected Nationwide's alternative argument and affirmed the trial court's judgment in favor of the Sacketts. *Id.*

With this precedent in mind,[11] we now turn to the disputed provision in the Kuhns's Policy, which provides in material part as follows:

J. "Your covered auto" means:

    1.    Any vehicle shown in the Declarations.

    **2.**    **Any of the following types of vehicles on the date you become the owner;**

        a.    a private passenger auto; or

        b.    a pickup or van.

    **This provision (J.2) applies only if:**

        a.    you acquire the vehicle **during** the policy period;

        b.    you ask us to insure it within **30 days** after you become the owner; and

        c.    with respect to a pickup or van, **no other insurance policy** provides coverage for that vehicle.

    If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:

---

[11] This precedent (i.e., *Sackett I*, *Sackett II*, and *Sackett III*) has been coined the "*Sackett* Trilogy." *See, e.g.*, *Mitchell v. Progressive Preferred Ins. Co.*, No. 3:14-CV-0384, 2015 WL 5762927, at *2 (M.D. Pa. Sept. 29, 2015).

a.  you wish to add or continue Damage to Your Auto Coverages; or

b.  it is a pickup or van used in any "business" other than farming or ranching.

**If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.**

*Doc. 24-2* at 23 (emphasis added).

Travelers asserts that the Kuhns's fourth vehicle was added to the Policy pursuant to its after-acquired-vehicle clause (i.e., Section J.2). Travelers further asserts that because this clause is continuous in nature, the statutory waiver requirement under § 1738(c) was never triggered. Thus, based on these assertions, Travelers contends that it was under no obligation to provide or secure a new waiver from the Kuhns. We agree.

The plain language of the Policy's after-acquired-vehicle clause provides that, in addition to any of the vehicles shown in the Declarations, coverage will also be extended to newly-acquired vehicles, and specifically, private passenger autos, pickups, and vans, so long as: those newly-acquired vehicles were acquired during the policy period; the insured asked the insurer to insure those vehicles within 30 days of becoming the owner; and with respect to any pickups or vans, there is no other insurance policy out there that provides coverage for those vehicles. In other words, the Policy will extend coverage to any vehicles shown in

the Declarations, as well as any new vehicles the insured(s) subsequently acquires, provided that these conditions are met.

Applying that framework here, we find that, at the inception of the Policy, coverage was only being extended to the three vehicles shown in the original "Automobile Policy Declarations" sheet—i.e., the Dodge Ram Pickup, the Dodge Durango, and the Chevrolet C30. *Doc. 24-2* at 17-20. But, we further find that, when the Kuhns subsequently acquired a fourth vehicle—i.e., the Ford F150 Pickup Trick— coverage also began being extended to that vehicle pursuant to the Policy's after-acquired-vehicle clause. The reason for this is that requisite conditions of that clause were satisfied.

Indeed, the Joint Stipulation makes clear that the Kuhn's fourth vehicle, which was a pickup, was acquired during the Policy period. *Compare doc. 17* at ¶ 1 (asserting that when the Policy was originally issued to the Kuhns, it had effective dates of May 9, 2008, to November 9, 2008) *with id.* at ¶ 7 (asserting that the Kuhn's fourth vehicle was added to the Policy on July 1, 2008, a date that falls well within the timeframe of those effective dates). The Joint Stipulation also makes clear that the Kuhns's fourth vehicle was added to the Policy within 30 days of having been purchased (*id.* at ¶ 13), and that it constituted a "covered auto" as defined in Section J.2 of the Policy (the Policy's after-acquired-vehicle clause) (*id.* at ¶ 14). And, finally, while not made clear by the Joint Stipulation, neither party

has argued, and we see no evidence to suggest, that there was another insurance policy out there, providing coverage for the Kuhns's fourth vehicle.

Accordingly, because the conditions of the Policy's after-acquired-vehicle clause had been satisfied, coverage was automatically extended to the Kuhns's fourth vehicle on the date that they became the owner of that vehicle, and such coverage continued to be extended for the existing policy period. Thus, since this coverage was automatic and continuing, we conclude, under *Sackett II*, that the Policy's after-acquired-vehicle clause is continuous, and not finite, in nature.

We find that our conclusion is supported by *Satterfield v. Erie Ins. Prop. & Cas.*, 618 S.E.2d 483 (W. Va. 2005), a case that the *Sackett II* Court specifically cited as illustrating an example of a continuous after-acquired-vehicle clause. In *Satterfield*, the after-acquired-vehicle clause extended coverage under the policy to "autos [the insured] acquired during the policy period." *Id.* at 485. Further, the clause would automatically extend such coverage to newly-acquired autos, only subject to the following conditions: the insurer had to insure all of the autos owned by the insured; and the insured had to notify the insurer about the newly-acquired autos during the policy period in which the acquisition took place. *Id.* The language of the after-acquired-vehicle clause in *Satterfield* is, therefore, akin to that in the instant Policy, which as we explained above, automatically extends

continuing coverage during the policy period, so long as the requisite conditions are met.

We find that our conclusion is also supported by *Bird v. State Farm Mut. Auto Ins. Co.* 165 P.3d 343 (N.M. Ct. App. 2007), another case cited by the *Sackett II* Court. Unlike *Satterfield*, however, the *Sackett II* Court specifically cited *Bird* as illustrating an example of a finite after-acquired-vehicle clause. In *Bird*, the parties' after-acquired-vehicle clause extended coverage to newly-acquired vehicles only until the 31st day, after which the clause required the insured to procure a new policy in order to secure continuing coverage for such newly-acquired vehicles. *Id.* at 346-47. In essence, the policy provided the insured with a 31-day grace period, after which the insured was tasked with securing new coverage. *See Sackett II*, 940 A.2d at 333 (explaining that the after-acquired-vehicle clause in *Bird* required the insured to apply for a new policy after the 31-day period in order to acquire coverage thereafter). By contrast here, however, the Policy's coverage under the after-acquired-vehicle clause is not limited in duration, and the clause did not require the Kuhns to apply for a new policy in order to secure continuing coverage throughout the existing policy period.

In addition to the illustrative cases cited by the *Sackett II* Court, we also find that the decisions of the Pennsylvania Superior Court lend further support for our conclusion that the Policy's after-acquired-vehicle clause is continuous, and not

finite, in nature. In *Shipp v. Phoenix Ins. Co.*, 51 A.3d 219, 221 (Pa. Super. 2012), the Pennsylvania Superior Court addressed the issue of whether insurers must provide their insureds with a new opportunity to waive stacked, underinsured motorist coverage when a new vehicle *replaces* an existing vehicle on a multi-vehicle policy. Even though this issue is different from the one before us—as we are faced with when a new vehicle is *added* to a multi-vehicle policy—it does not change the fact that the Superior Court reviewed the Supreme Court's opinions in *Sackett I* and *II*, and examined the language of the after-acquired-vehicle clause in the parties' policy. That language, which is identical to the language before us, provided as follows:

> J. "Your covered auto" means:
>
> > 1. Any vehicle shown in the Declarations.
> >
> > 2. Any of the following types of vehicles on the date you become the owner:
> >
> > a. a private passenger auto; or
> >
> > b. a pickup or van.
>
> This provision (J.2.) applies only if:
>
> > a. you acquire the vehicle during the policy period;
> >
> > b. you ask us to insure it within 30 days after you become the owner; and
> >
> > c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

27

*Id.* at 223.  In accordance with the mandate of *Sackett II*, the Superior Court concluded that this language was "of the continuous, non-finite variety[.]"  *Id.*  In support, the Superior Court explained as follows:

> As can be seen, the coverage on the replacement vehicle will continue uninterrupted as long as the Shipps give notice to Phoenix. *Sackett II* held that continuing coverage subject only to a notice requirement did not require the insurer to re-obtain waiver.  Thus, the initial waiver signed by the Shipps is still valid and bars the stacking of coverage.

*Id.*

Similarly, in *Toner v. The Travelers Home & Marine Ins. Co.*, 137 A.3d 583, 584-85 (Pa. Super Ct. 2016), the Pennsylvania Superior Court addressed the issue of whether the insurer was required to provide the insured with a new stacking waiver, where the insured had initially waived stacking at the inception of her *single*-vehicle policy, but subsequently added two additional vehicles.  Again, while this issue is different from the one presented here—as we are faced with a *multi*-vehicle policy—it does not negate the fact that the Superior Court considered the Supreme Court's opinions in *Sackett I* and *II* and examined the language of the after-acquired-vehicle clause in the parties' policy.  The language of that clause, just as it is in *Ship*, is identical to the language presently before us.  In particular, the policy defined "covered auto" in relevant part as follows:

> 2. Any of the following types of vehicle on the date you become the owner:

a. a private passenger auto; or

　　　　　b. a pickup or van.

　　　This provision (J.2) applies only if:

　　　　　a. you acquire the vehicle during the policy period,

　　　　　b. you ask us to insure it within 30 days after you
　　　　　become the owner.

*Id.* at 591.

　　　Pursuant to this language, the Superior Court found that the insured was given 30 days in which to inform the insurer of the purchase of a new vehicle, and thereby extend coverage to that vehicle under the existing policy. *Id.* at 588. The Superior Court further found that this language imposed no requirement that "the insured purchase a different policy. Rather, the 30-day limit [was] the timely notice requirement [the Pennsylvania] Supreme Court recognized existed in all Pennsylvania automobile insurance policies." *Id.* at 591. Thus, the Superior Court concluded that the insurer was not required to provide the insured with either new or supplemental waiver forms. *Id.*

　　　Accordingly, we find that our conclusion is buttressed by jurisprudence from Pennsylvania's high court and appellate courts, as well as by cases from other jurisdictions to which the state's high court has cited with approval. The Kuhns, however, adamantly oppose such a conclusion, and they have done so by largely relying on *Bumbarger v. Peerless Indemnity Insurance Company*, 93 A.3d 872 (Pa.

Super. 2014).  In support, the Kuhns argue that the facts of the instant matter fall directly within the scope of *Bumbarger*, such that the instant matter demands a similar disposition.  Because we find, however, that *Bumbarger* is factually distinguishable, the Kuhns's reliance on that case is woefully misplaced.

There, Ms. Bumbarger insured two vehicles under a motor vehicle insurance policy that was issued by Peerless Indemnity Insurance Company ("Peerless").  *Id.* at 873.  The policy provided for, among things, uninsured and underinsured motorist coverage in the amount of $25,000/person and $50,000/occurrence. *Id.* Ms. Bumbarger rejected stacking of that coverage, however, by executing stacking waivers pursuant to the MVFRL.  *Id.*  Approximately two months later, Ms. Bumbarger purchased a third vehicle.  *Id.*  At the time of purchase, she requested her insurance agent to add that vehicle to, and insure it under, her existing policy.[12]

---

[12] By contrast here, however, the record is devoid of any evidence that the Kuhns's fourth vehicle was added to the Policy at the time they purchased it.  There is similarly no evidence that their fourth vehicle was added to the Policy before they even took possession of it.  *See, e.g., Pergolese v. Standard Fire Insurance, Co*., 162 A.3d 481, 490 (Pa. Super. Ct. 2017) ("[There,] appellees notified their agent of the new vehicle . . . and requested proof of coverage before the purchase was completed.  The agent then faxed a copy of the insurance card and issued amended declarations pages reflecting coverage of the new vehicle at an increased premium. As in *Bumbarger*, the after-acquired-vehicle provision in the [policy] [was] simply inapplicable[, and thus, the Court did not need to] consider whether it [was] continuous or finite.").  Even if there was such evidence here, we are not convinced that it would necessitate a different outcome.

*Id.* at 878.  The agent then notified Peerless, and the third vehicle was added to the policy through an "endorsement."  *Id.* at 873.[13]

Thereafter, Ms. Bumbarger was involved in a motor vehicle accident while driving the third vehicle and, as a result, she submitted a claim for stacked, uninsured motorist coverage under her policy.  *Id.*  at 874.  The claim was denied, and the Bumbargers proceeded by filing a complaint against Peerless, alleging a breach of the insurance contract for Travelers's failure to provide them with stacked, uninsured motorist coverage in the absence of new waivers after the third and fourth vehicles had been purchased.  *Id.*  The trial court ruled in favor of the Bumbargers, and Peerless appealed to a panel of the Pennsylvania Superior Court, which affirmed. *Id.*  Peerless then filed an application for reargument *en banc*, and it was granted.  *Id.*

Peerless presented one issue for reargument: whether it was required to obtain new uninsured and underinsured stacking waivers from Ms. Bumbarger when she added the third vehicle to her existing policy.  *See id.* at 876.  In considering this question, the Court found that the after-acquired-vehicle clause was irrelevant because the third vehicle "was added by endorsement at the time of purchase onto the declarations page of the [p]olicy; at this point, the vehicle was covered by the original policy; therefore, the newly-acquired vehicle clause was

---

[13] Although Ms. Bumbarger eventually added a fourth vehicle to her policy, the Superior Court's decision was primarily related to a discussion on the third vehicle.

not triggered." *Id.* at 878. The Court further found that, even if the after-acquired-vehicle clause had been relevant, it would not have compelled a different result. *Id.* The language of that clause provided as follows:

K. "Newly acquired auto":

* * *

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

a. For any coverage provided in this policy, except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" **which is in addition to any vehicle shown in the Declarations**, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

*Id.* (emphasis in original).

The Court, in finding that the after-acquired-vehicle clause would not have compelled a different result, drew a distinction between coverage for vehicles that are added to an existing policy and those that replace vehicles already insured thereunder: "In the latter case, an insured need not notify the insurer about the

replacement vehicle; coverage is automatically applied to that automobile upon the insured gaining its ownership. In the former case, an insured must affirmatively notify the insurer, within a set period of days (45), in order for coverage to be extended to that additional vehicle." *Id.* at 879. Thus, based on this distinction, the Court concluded that, even if the clause had applied, coverage for newly-acquired vehicles was not automatic, and thus, Peerless would have been required, under *Sackett I*, to secure a new stacking waiver from the Bumbargers.[14] *See id.*

Thus, having reviewed *Bumbarger*, we now turn to the Kuhns's argument that the facts of the instant matter fall directly within the scope thereof, such that the instant matter demands a similar disposition. In support of this argument, the Kuhns have raised the following assertions: that their fourth vehicle was similarly added to the Policy by way of a declarations sheet and endorsement; and that the

---

[14] Despite making this conclusion, the *Bumbarger* Court neither appears to have recounted all of the pertinent provisions in the policy, nor offered a meaningful discussion on why that policy's after-acquired-vehicle provision was, in fact, finite. By way of example, missing from the court's opinion is the policy's provision regarding the discussed 45-day period in which the insured is required to notify the insurer in order to extend coverage to an additional vehicle. And, by way of further example, there is no discussion regarding why or how this 45-day period is similar to or different from the "conditions subsequent" that were discussed by the Pennsylvania Supreme Court in *Sackett II*. *See, e.g.*, *Sackett II.*, 940 A.2d at 334 ("To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, we clarify that *Sackett I* should not disturb the effect of an initial [uninsured/underinsured motorist] stacking waiver obtained in connection with a multi-vehicle policy.").

language of the instant after-acquired-vehicle clause is comparable to that of the one in *Bumbarger*.

We first review the Kuhns's contention that, similar to the facts of *Bumbarger*, their fourth vehicle was added to the Policy pursuant to a declarations sheet and endorsement, not an after-acquired-vehicle clause. We find, however, that their contention is inconsistent with how Pennsylvania's Insurance Commissioner interprets after-acquired-vehicle clauses in the context of stacking. *See Sackett II*, 940 at 331 (reiterating the Commissioner's interpretation as follows: "the mechanism by which vehicles generally are added to existing policies is via 'newly acquired vehicle clauses,' which are made practically necessary by the mandate of the MVFRL for financial responsibility as a prerequisite to operation of a motor vehicle, *see* 75 Pa.C.S. § 1786, and are included universally within automobile insurance policies issued in Pennsylvania.").

We also find that their contention is inconsistent with the plain language of the instant Policy. Under the Policy's after-acquired-vehicle clause, coverage will be extended to a new vehicle, on the date the Kuhns become the owner of that vehicle, so long as the following conditions have been satisfied: the Kuhns acquired the new vehicle during the policy period; they asked Travelers to insure that new vehicle within 30 days of becoming the owner; and with respect to any pickups or vans, the new vehicle was not already covered under another insurance

policy. These conditions, as discussed above, were satisfied, and therefore, the Policy automatically extended coverage to the Kuhns's fourth vehicle.

It bears emphasis, that the Policy would have extended such coverage regardless of whether Travelers issued the new "Automobile Policy Declarations" sheet on July 1, 2008. Indeed, while the fourth vehicle may have certainly been "added" to this "Automobile Policy Declarations" sheet, neither the adding of the fourth vehicle to that sheet, nor the issuance of that sheet, triggered Travelers's contractual duty to extend coverage to the Kuhns's newly-acquired vehicle. Instead, its duty was triggered by the Policy's after-acquired-vehicle clause. *Doc. 24-2* at 23. And, in this regard, we find it particularly fitting to echo the insightful words of Justice Stabile in his dissenting opinion in *Bumbarger*:

> New waivers are required when there has been a "new" purchase of insurance. New insurance does not include additions to an existing policy that merely extends coverage on a continuous basis. Ultimately, decisions in stacking cases must rest upon an examination of contractual language. Interpreting contracts is nothing new to our courts. The resolution of these cases can be and will be made much simpler if we return to interpreting contracts, as opposed to deciding cases based purely upon the manner in which a vehicle is added to a policy. The latter ignores our duty to engage in contractual analysis[.]

*Pergolese*, 162 A.3d at 502 (Stabile, J., dissenting).

Next, we address the Kuhn's argument that the language of the instant after-acquired-vehicle clause is similar to that of the one in *Bumbarger*. In support of this argument, the Kuhns have raised several allegations. To the extent the Kuhns

allege that, like the clause in *Bumbarger*, the Policy's clause distinguishes between vehicles that are added to a policy and vehicles that replace those, which are already insured thereunder, we find that their argument is unpersuasive. The sheer fact that an after-acquired-vehicle clause differentiates between replacement and add-on vehicles is not alone dispositive of whether the clause is continuous or finite in nature. Instead, the pertinent inquiry is to ascertain the specific terms of that clause.

Further, to the extent that the Kuhns allege that the Policy's after-acquired-vehicle clause is finite in nature, just as it was in *Bumbarger*, we also find that this argument is unpersuasive. As discussed above, the coverage under the Policy's after-acquired-vehicle is automatic, and continues in effect throughout the existing policy period. As also discussed above, the *Bumbarger* Court failed to include the relevant policy provisions in its opinion, and it further failed to offer a meaningful discussion on why the after-acquired-vehicle clause before it was, in fact, finite. Thus, *Bumbarger*, is of little value to us here, especially since the Pennsylvania Supreme Court has plainly spoken on such stacking issues in *Sackett I* and *II*.

Moreover, to the extent that the Kuhns similarly argue that various conditions of the Policy's after-acquired-vehicle clause—such as the condition of notice—render it finite in nature, we once again find that their argument is unpersuasive. Conditions subsequent, such as notice and the payment of

premiums, do not render an after-acquired-vehicle clause finite in nature. *See e.g.*, *Sackett II*, 940 A.2d at 334 (citing *Christensen v. Mountain West Farm Bureau Mut. Ins. Co.*, 22 P.3d 624, 629 (Mont. 2000) for the following proposition: "[I]f other conditions of 'after acquired vehicle' coverage are met, coverage on newly acquired vehicles attaches at the time of acquisition and continues for the policy period unless the insured refuses to pay any additional premium which is requested.").

Finally, we emphasize that, to the extent the Kuhns are simply inviting this Court to enunciate a generalized rule that the issuance of a new declarations sheet instantly nullifies the Policy's after-acquired-vehicle clause, thereby requiring an insurer like Travelers to secure new stacking waivers without any regard to the language of that after-required-vehicle clause, we plainly decline their invitation to do so. *See Seiple v. Progressive N. Ins. Co.*, 568 F. App'x 183, 187 (3d Cir. 2014) (finding that, even if the district court would have construed the vehicle additions as "endorsements," the insured still failed to demonstrate that this construction would have impacted the analysis or conclusion of the case, and further finding no *per se* rule that vehicles added by endorsement require new stacking waivers without regard to the language of the after-acquired-vehicle clause).

Accordingly, because the Kuhns's fourth vehicle was extended coverage under the Policy's continuous after-acquired-vehicle clause, we find that, pursuant

to *Sackett II*, such coverage does not constitute a new purchase as contemplated by § 1738 of the MVFRL, and thus, Travelers was under no duty to provide or secure new or supplemental uninsured and underinsured stacking waivers. *See Sackett II*, 840 A.2d at 334 ("We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental [uninsured/underinsured] stacking waivers.").

## V. Conclusion.

To conclude, we have been tasked with applying Pennsylvania's statutory provisions of stacked, underinsured motorist coverage, as set out in the MVFRL. Those statutory provisions, which have largely been interpreted by the Pennsylvania Supreme Court in *Sackett I* and *Sackett II*, lead us to the conclusion that the Kuhns are not entitled to the declaratory relief that they seek in this action. Thus, for the reasons discussed herein, we will grant Travelers's pending motion for summary judgment, and deny the Kuhns's pending cross-motion for summary judgment.

An appropriate implementing order follows.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Chief Magistrate Judge